IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| EDWIN J. RUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| ELECTRICAL WORKERS | ) |
| LOCAL NO. 26 PENSION | ) |
| TRUST FUND, | ) |
| | ) |
|     <u>Serve:</u>  Peter Klein | ) |
|            Fund Manager | ) |
|            4601 Presidents Drive | ) |
|            Suite 300 | ) |
|            Lanham, MD 20706 | ) |
| | ) |
| TRUSTEES OF THE | ) |
| ELECTRICAL WORKERS | ) |
| LOCAL NO. 26 PENSION | ) |
| TRUST FUND, | ) |
| | ) |
|     <u>Serve:</u>  Peter Klein | ) |
|            Fund Manager | ) |
|            4601 Presidents Drive | ) |
|            Suite 300 | ) |
|            Lanham, MD 20706 | ) |
| | ) |

**COMPLAINT**

Plaintiff Edwin J. Rust ("Rust"), by counsel, states as follows as his Complaint against the Electrical Workers Local No. 26 Pension Plan Trust Fund (the "Plan") and the Trustees of the Electrical Workers Local No. 26 Pension Trust Fund (the "Trustees").

## NATURE OF THE ACTION

1. This action is to recover pension plan benefits governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") that were improperly and arbitrarily terminated by the Defendants. Mr. Rust sues also for Defendants' multiple violations of ERISA for failing to provide him with Plan documents, despite Mr. Rust's repeated requests. Mr. Rust sues also to recover the costs and fees incurred in filing this action against Defendants.

## PARTIES

2. Rust is an individual resident of Wintergreen, Virginia. Rust has resided in Wintergreen since 2005.

3. At all relevant times, Rust is, was, and has been, a participant, as defined under § 1002(7) of ERISA, in the Plan.

4. The Plan is a pension plan governed by ERISA. The Plan is an employee benefit plan, as defined under § 1002(3) of ERISA.

5. The Trustees are the plan administrator for the Plan as defined by ERISA. At all relevant times herein, the Trustees, by and through its Appeals Committee, is, and has been, the plan administrator, the claims administrator, and the claims fiduciary, as those terms are defined under §§ 1002(16) and (21) of ERISA respectively, for the Plan. In its capacity as the plan and claims administrator and the claims fiduciary for the Plan, the Trustees made the decisions and committed the ERISA violations at issue in this action.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

7. Venue is proper in this district and division pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claims herein occurred, including Rust's application for Plan benefits and the Trustees' approval and termination of those benefits.

## FACTS

**A. Rust's Pension Plan Benefits**

8. From 1981 until 2008, Rust was eligible to participate in the Plan.

9. Rust retired in 2008.

10. Rust and/or his former employer consistently paid quarterly payments to the Plan from 1981 to 1992 in connection with a pension Plan benefit allegedly worth approximately $441/month after retirement.

11. Furthermore, Rust and/or his former employer consistently paid quarterly payments to the Plan from 1981 to 2008 in connection with a pension Plan benefit allegedly worth approximately $95/month after retirement plus a lump sum benefit of $9,000. Upon information and belief, this Small Pension Benefit is part of the Plan at issue in this lawsuit.

12. As a result of his timely and consistent payments and by virtue of his status as a Plan participant, Rust accrued rights to certain pension benefits under the Plan.

13. Upon retirement, Rust became entitled to receive pension benefits from the Plan.

**B.     The Trustees' approval and termination of Rust's Plan benefits**

14. In March of 2008, Rust applied for pension benefits under the Plan.

15. The Trustees approved Rust's application and started paying him pension benefits shortly thereafter.

16. On July 23, 2008, however, the Trustees notified Rust that they were terminating his pension benefits. According to the termination letter, the Trustees based their termination decision on an allegation that Rust had converted assets belonging to the Plan.

17. Specifically, the Trustee's representative told Rust that a company formerly owned by Rust ("NSR") owed the Plan "$18,347.87 and liquidated damages and interest in the amount of $3,669.57."

18. According to the termination letter, the Trustees determined that Rust had "converted assets belonging to [the Plan] that were previously in the possession of" NSR. Therefore, according to the Trustees, Rust had "constructively received any Pension Benefit due to [him] based upon [his alleged] 10.25 years of Pension credit."

19. Furthermore, the Trustees demanded Rust repay the Plan $3,528.00 in Plan benefits that he had allegedly already been paid.

20. The termination letter does not cite a single provision of the Plan documents upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

21. The termination letter does not cite a single provision of the Plan documents upon which the Trustees determined that they or the Plan are legally or equitably entitled or authorized to recover or set-off any past or present Plan benefit payments to Rust.

4

22. The termination letter does not cite a single statutory or regulatory ERISA provision, if any, upon which the Trustees determined that they or the Plan are legally or equitably entitled or authorized to recover or set-off any past or present Plan benefit payments to Rust.

23. The termination letter does not state the factual information, if any, upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

**C.	Rust's July 2008 Request for Plan documents**

24. Later that same month (July 2008), Rust requested the Trustees to provide all plan documents applicable to his rights to benefits under the Plan and requested any documentation allegedly relied upon by the Trustees in making their termination decision (the "July 2008 Request").

25. In response to Rust's July 2008 Request, the Trustees' representative refused to provide Rust with any Plan documents.

26. In the alternative, in response to Rust's July 2008 Request, the Trustees failed to provide Rust with any Plan documents.

**D.	The First Appeal and Denial**

27. Rust timely appealed the Trustee's decision to terminate his pension benefits by submitting an appeal letter (the "First Appeal").

28. In the First Appeal letter, counsel for Rust explained that Rust had not converted any assets belonging to the Plan. In fact, NSR, the company referenced in the Trustee's termination letter, had defaulted on its loan obligations and was seized by CommerceFirst Bank (the "Bank") in 2004 (approximately four years before the termination of benefits).

29. At the same time, the Bank had taken control of NSR's assets.

30. After the Bank took control, Rust had no control over NSR's capital or other assets.

31. Counsel for Rust also provided documents indicating that the Bank had excluded Rust from exercising any control over NSR after its seizure.

32. Based on this information, the Trustees' decision to terminate benefits was inaccurate, arbitrary and capricious, an abuse of discretion, and not based on any factual evidence.

33. On or about December 29, 2008, the Trustees' representative acknowledged receipt of Rust's appeal.

34. On March 12, 2009, the Trustees denied Rust's appeal, stating that "Rust's pension benefit has not been denied outright; rather, it has been found that Mr. Rust has already constructively received any pension benefit due to him based upon his 10.25 years of pension credit. In fact, Mr. Rust has been overpaid in error in the amount of $3,528.00."

35. The March 12, 2009 letter from the Trustees' representative requested Rust to submit *more* documentary evidence that he had not converted the Plan's alleged assets at issue (essentially requiring Rust to prove a negative).

36. The March 12, 2009 letter does not cite a single provision of the Plan documents upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

37. The March 12, 2009 letter does not cite a single provision of the Plan documents upon which the Trustees determined that they or the Plan are legally or equitably entitled or authorized to recover or set-off any past or present Plan benefit payments to Rust.

6

38. The March 12, 2009 letter does not cite a single statutory or regulatory ERISA provision, if any, upon which the Trustees determined that they or the Plan are legally or equitably entitled or authorized to recover or set-off any past or present Plan benefit payments to Rust.

39. The March 12, 2009 letter does not state the factual information, if any, upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

40. Instead of concluding the administrative appeal process, the Trustees initiated a supplemental, or second, appeal period.

**E.     The Second Appeal**

41. Pursuant to the Trustees' March 12, 2009 letter, Rust timely appealed a second time (the "Second Appeal").

42. In the Second Appeal letter, counsel for Rust also made a claim for Rust's Plan benefits entitling him to a monthly payment of $95 plus a lump sum benefit of $9,000 (the Small Pension Benefit).

43. In the Second Appeal letter, counsel for Rust explained that the Trustees' termination of Rust's benefit was essentially based on a common law theory of setoff or offset, which was not based on any statutory or contractual rights.

44. In the Second Appeal letter, counsel for Rust explained that the Trustees' termination of Rust's benefit was contrary to the facts and the law.

45. The Trustees' decision to terminate Rust's benefits was based on the conclusion that Rust had "constructively" received the Plan benefits due to him.

46.     The underlying legal theory supporting the Trustees' conclusion, therefore, was based on a common law theory of "setoff" or "offset" against Rust's benefit claim.

47.     Therefore, the Trustees' decision was not based on any statutory or contractual rights.

48.     Rust's claim for Plan benefits, however, is governed by ERISA and the terms of the Plan documents, not common law. Therefore, the Trustees' termination of benefits is contrary to the applicable law.

49.     Furthermore, the Trustees' decision is contrary to the common law, since there is no mutuality between the two alleged claims.

50.     On one hand, Rust asserts a claim for Plan benefits, which is based on pension payments that were, as a matter of undisputed fact, paid by Rust and/or his former employer to the Plan from 1981 to 2008.

51.     On the other hand, the Trustees' alleged claim is against NSR for NSR's alleged failure to make payments to the Plan. This alleged claim has nothing whatsoever to do with Rust's claim for Plan benefits or the undisputed payments made by Rust and/or his former employer to the Plan from 1981 to 2008. Indeed, the Trustees' alleged claim is against NSR, not Rust.

52.     Thus, the two claims have no mutuality whatsoever and, therefore, the Trustees' decision to terminate Rust's Plan benefits is contrary to the common law, even if common law was applicable.

53.     Counsel further noted that the termination was not based on any factual information, but, instead, was based on assumptions by the Trustees that had no factual support.

8
Case 3:10-cv-00029-NKM-BWC   Document 1   Filed 06/09/10   Page 8 of 19   Pageid#: 8

F.   **Rust's September 2009 Request for Plan Documents**

54.   On September 3, 2009, Rust's counsel requested from the Trustees pursuant to ERISA "all plans, policies, or contract documents of the Fund or the National Electrical Benefit Fund relating to Mr. Rust and any and all documents relied upon by the Fund in reaching its erroneous and unreasonable decision (i.e., the administrative record)" (the "September 2009 Request").

55.   In response to the September 2009 Request, the Trustees' representative did not provide Rust with any Plan documents.

G.   **The November 2009 Request for Plan Documents**

56.   Having received no Plan documents from the Trustees, on November 5, 2009, Rust's counsel contacted the Trustees' representative and again requested Plan documents, stating "the Fund has failed to provide the requested plan documents, policies, and contracts and administrative record compiled and relied upon by the plan/claims administrator in this matter. As stated in my September 3, 2009 letter, the document request was made pursuant to ERISA. Produce the documents to my office immediately" (the "November 2009 Request").

57.   In response to Rust's November 2009 Request, the Trustees failed to provide Rust with any Plan documents or any of his other previous requests for Plan documents.

H.   **The Trustees' Denial of Rust's Second Appeal and the Exhaustion of Rust's Administrative Remedies**

58.   On December 15, 2009, the Trustees upheld their earlier termination of Rust's Plan benefits and denied his second appeal, stating, once again, that "Rust's pension benefit has not been denied outright; rather, it has been found that Mr. Rust has already constructively received any pension benefit due to him based upon his 10.25 years of pension credit. In fact, Mr. Rust has been overpaid in error in the amount of $3,528.00."

9

59. Like the Trustees' earlier letters, the December 15, 2009 letter does not cite a single provision of the Plan documents upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

60. The December 15, 2009 letter does not cite a single provision of the Plan documents upon which the Trustees determined that they or the Plan are legally or equitably entitled or authorized to recover or set-off any past or present Plan benefit payments to Rust.

61. The December 15, 2009 letter does not cite a single statutory or regulatory ERISA provision, if any, upon which the Trustees determined that they or the Plan are legally or equitably entitled to recover or set-off any past or present Plan benefit payments to Rust.

62. The December 15, 2009 letter does not state the factual information, if any, upon which the Trustees determined that Rust had "converted assets" or upon which the Trustees ultimately terminated Rust's benefits.

63. Furthermore, the December 15, 2009 letter fails to address any of the points raised by Rust's counsel during the second appeal. Upon information and belief, and based on the Trustees' refusal to produce the Plan documents pursuant to ERISA and the Trustees' refusal to consider the applicable law and documents in making their decision, the Trustees' termination of Rust's Plan benefits is based on some personal animosity that the Trustees have toward Rust, rather than any factual information, ERISA provisions, or Plan documents.

64. According to the Trustees' December 15, 2009 letter, Rust has exhausted his administrative remedies.

**I.  The Trustees' production of an incomplete and unrelated health and welfare plan document**

65. In their December 15, 2009 letter, the Trustees failed to provide Rust with any Plan documents in response to the November 2009 Request or any of his other previous requests for Plan documents.

66. Instead, the Trustees provided Rust with a document that appears to be a summary plan description (the "Health SPD") for a *health and welfare* benefit plan, and not the summary plan description for the *pension* Plan at issue in this matter.

67. The Health SPD produced by the Trustees relates to the "Electrical Welfare Trust Fund," not the Pension Trust Fund at issue in this matter.

68. The Health SPD produced by the Trustees contains no information whatsoever regarding the pension benefits at issue in this matter.

69. Furthermore, the copy of the Health SPD produced by the Trustees on December 15, 2009 is *incomplete*.

70. The table of contents for the Health SPD states that the document is at least 76 pages long.

71. However, the copy of the Health SPD produced by the Trustees is only 69 pages long.

72. According to the table of contents, the sections missing from the Health SPD produced by the Trustees (the sections after page 69) are entitled "Your ERISA Rights" and "Plan Information."

**J.     Rust's February 2010 Request for Plan documents**

73.     On February 10, 2010, counsel for Rust again requested Plan documents and other documents from the Trustees, stating the following:

> To be clear, Mr. Rust is requesting for the <u>fourth</u> time any and all Pension Plan documents relating to the Pension Plan benefits at issue and the Pension Plan Administrator's erroneous decision to terminate those benefits. This request -- like the three previous document requests -- includes, but is not necessarily limited to, the following: (i) the current complete Plan document for the IBEW Local No. 26 Pension Trust Fund; (ii) all versions of Plan document for the IBEW Local No. 26 Pension Trust Fund, if any, from 1981 to the present; (iii) the current summary plan description for the IBEW Local No. 26 Pension Trust Fund; (iv) all versions of the summary plan description for the IBEW Local No. 26 Pension Trust Fund, if any, from 1981 to the present; (v) the annual report; (vi) the bargaining agreements, trust agreements, contracts, or any other instruments under which the IBEW Local No. 26 Pension Trust Fund was established or is operated; and (vii) the complete administrative record related to Mr. Rust and his claim for Pension Plan benefits, including all paperwork related to his Pension Plan benefits and the Plan Administrator's decision to terminate those benefits. This request for Pension Plan documents is made pursuant to 12 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 of ERISA.
>
> If there are no Pension Plan documents please state so. If the Plan Administrator's decision is not based upon any documents, and, therefore, there is no administrative record, please state so. If I do not hear from you within 30 days of receipt of this certified letter I will assume there are no such documents and will act accordingly.

74.     The Trustees did not respond to Rust's "February 2010 Request" within 30 days of receiving the request.

**K.     The Trustees' production of a single Plan document**

75.     On or about May 11, 2010, counsel for the Trustees and the Plan finally produced an October 1, 2004 copy of the "Electric Workers Local No. 26 Pension Plan" to Rust's counsel.

12

76. To date, Defendants have not produced to Rust (i) the current complete Plan document for the IBEW Local No. 26 Pension Trust Fund; (ii) all versions of the Plan document for the IBEW Local No. 26 Pension Trust Fund, if any, from 1981 to the present; (iii) the current summary plan description for the IBEW Local No. 26 Pension Trust Fund; (iv) all versions of the summary plan description for the IBEW Local No. 26 Pension Trust Fund, if any, from 1981 to the present; (v) the annual report; (vi) the bargaining agreements, trust agreements, contracts, or any other instruments under which the IBEW Local No. 26 Pension Trust Fund was established or is operated; or (vii) the administrative record related to Mr. Rust and his claim for Pension Plan benefits, including all paperwork related to his Pension Plan benefits and the Trustees' decision to terminate those benefits.

77. Upon information and belief, there is no current Plan document other than the document produced by the Trustees to Rust on May 11, 2010.

78. Upon information and belief, there is no administrative record related to Rust's claim for Pension Plan benefits or the Trustees' decision to terminate those benefits.

**COUNT I:  Breach of Fiduciary Duty (29 U.S.C. § 1132(a)(3))**

79. The preceding allegations are re-alleged as if fully set forth herein.

80. ERISA imposes fiduciary duties upon the Trustees, *inter alia*, to disseminate and produce correct information and certain documents upon request of participants.

81. By repeatedly failing to provide Rust with the requested Plan documents *during and after the administrative appeal process*, the Trustees breached its fiduciary duties.

82. Because of the Trustees' failure to provide the Plan documents, Rust has been caused, and is being caused, substantial financial harm.  He has been placed in a situation where

13

he has had to appeal the Trustees' termination of Plan benefits without knowing his full rights under the Plan documents.

83. As a result of the Trustees' failure to provide the Plan documents in violation of ERISA, this Court should order that the Trustees and/or the Plan are estopped from terminating Rust's Plan benefits, and force the Trustees and/or the Plan to reinstate his Pension benefits in full; and reimburse Rust for any Pension benefits owed to him since the date of termination.

84. The Court should also award Rust his attorneys' fees and all other appropriate relief under ERISA, as requested below, for having to litigate these issues in this action.

### COUNT II: Failure to Provide Plan Documents
### (29 U.S.C. §§ 1132(a)(1)(A) and 1132(c)(1))

85. The preceding allegations are re-alleged as if fully set forth herein.

86. Section 1132(c)(1)(B) of ERISA provides, *inter alia*, that any plan administrator:

> who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailng the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1.

87. Furthermore, each separate failure by the plan administrator to produce plan documents within 30 days of request "shall be treated as a separate violation." *Id*.

88. Rust requested Plan documents from the Trustees in July of 2008.

14

89. Despite receiving this request, the Trustees failed to provide any Plan documents until May 11, 2010.

90. Pursuant to ERISA, the deadline for production of the requested Plan documents was approximately the end of August 2008 (the "August 2008 Deadline").

91. More than 620 days passed between the August 2008 Deadline and the May 11, 2010 production date.

92. Rust requested Plan documents from the Trustees on September 3, 2009.

93. Despite receiving this request, the Trustees failed to provide any Plan documents until May 11, 2010.

94. Pursuant to ERISA, the deadline for production of the requested Plan documents was October 3, 2009 (the "October 3, 2009 Deadline").

95. 220 days passed between the October 3, 2009 Deadline and the May 11, 2010 production date.

96. Rust requested Plan documents from the Trustees on November 5, 2009.

97. Despite receiving this request, the Trustees failed to provide any Plan documents until May 11, 2010.

98. Pursuant to ERISA, the deadline for production of the requested Plan documents was December 5, 2009 (the "December 5, 2009 Deadline").

99. 157 days passed between the December 5, 2009 Deadline and the May 11, 2010 production date.

100. Rust again requested Plan documents from the Trustees on February 10, 2010.

101. Despite receiving this request, the Trustees failed to provide any Plan documents until May 11, 2010.

15

102. Pursuant to ERISA, the deadline for production of the requested Plan documents was March 7, 2010 (the "March 7, 2010 Deadline").

103. 65 days passed between the March 7, 2010 Deadline and the May 11, 2010 production date.

104. Each failure by the Trustees to provide Rust with the Plan documents within 30 days of the request constitutes a separate violation of ERISA.

105. Each failure by the Trustees to provide Rust with the Plan documents within 30 days of the request entitles Rust to recover up to $110 per day in statutory damages.

106. The Trustees' failure to comply with the multiple requests for materials has not been inconsequential or otherwise "innocent." To the contrary, the Trustees' failure has caused Rust and his counsel to suffer significant prejudice: (i) in preparing and submitting Rust's appeal of the Trustees' termination of benefits; (ii) in assessing the merits (or lack thereof) of the Trustees' position as to Rust's pension benefits; and (iii) in preparing for this lawsuit.

107. Because the Trustees have failed to comply with ERISA's requirements in failing to provide certain Plan documents and materials to Rust, because the Trustees are a sophisticated party which should be fully aware of the requirements of ERISA, and because Rust has suffered significant prejudice as a result of the Trustee's refusal to provide the requested materials, the Court should assess the full $110 per day penalty under ERISA against the Trustees and/or the Plan for each and every failure by the Trustees to provide the requested materials.

108. The Court should also award Rust his attorneys' fees and all other appropriate relief under ERISA, as required below, for having to litigate these issues in this lawsuit.

## COUNT III: Enforce and Clarify Right to Benefits
## (29 U.S.C. § 1132(a)(1)(B))

109. The preceding allegations are re-alleged as if fully set forth herein.

110. The Trustees terminated Rust's pension Plan benefits.

111. Rust made a timely and proper appeal regarding the Trustees' termination of benefits, which appeal was denied by the Trustees and/or the Plan.

112. Rust has exhausted the Plan's administrative process and his claims are ripe for judicial review in this Court.

113. Pursuant to the Plan document produced by the Trustees' and the applicable law of ERISA, the Trustees do not have discretionary authority to approve, deny, or terminate claims for Plan benefits, including Rust's claim for Plan benefits.

114. Rust requests that the Trustees' decision to terminate his pension Plan benefits be overturned by this Court because the decision is wrong, incorrect, improper, unlawful, not based on any evidence, contrary to the plain language of the Plan, an abuse of discretion, and/or arbitrary and capricious. In so doing, this Court should award benefits retroactively to July 2008 (the date of termination) and force the Trustees and/or the Plan to continue paying Rust his pension benefits on a monthly basis going forward pursuant to the Plan documents.

115. The Court should also award Rust his attorneys' fees and all other appropriate relief under ERISA for having to litigate these issues in this lawsuit.

WHEREFORE, Plaintiff requests this Honorable Court to order, adjudge, and decree that:

    a) The Trustees have breached their fiduciary duties by failing to provide Rust with the Plan documents despite receiving multiple requests during and after the

17
Case 3:10-cv-00029-NKM-BWC   Document 1   Filed 06/09/10   Page 17 of 19   Pageid#: 17

administrative appeals process, and, therefore, the Trustees and/or the Plan are estopped from terminating Rust's Plan benefits, and must reinstate Rust's Pension benefits in full; and reimburse Rust for any Pension benefits owed to him since the date of termination;

b) The Trustees and/or the Plan should pay Rust statutory and Plan penalties of $68,200 ($110/day X 620 days) due to Defendants' failure to respond properly to Rust's July 2008 Request for Plan Documents;

c) The Trustees and/or the Plan should pay Rust statutory and Plan penalties of $24,200 ($110/day X 220 days) due to Defendants' failure to respond properly to Rust's September 2009 Request for Plan Documents;

d) The Trustees and/or the Plan should pay Rust statutory and Plan penalties of $17,270 ($110/day X 157 days) due to Defendants' failure to respond properly to Rust's November 2009 Request for Plan Documents;

e) The Trustees and/or the Plan should pay Rust statutory and Plan penalties of $7,150 ($110/day X 65 days) due to Defendants' failure to respond properly to Rust's July 2008 Request for Plan Documents;

f) The Trustees' decision to terminate Rust's Plan benefits is overturned because it is wrong, incorrect, improper, unlawful, not based on any evidence, contrary to the plain language of the Plan, an abuse of discretion, and/or arbitrary and capricious. In so doing, this Court should award benefits retroactively to July 2008 (the date of termination) and force the Trustees and/or the Plan to continue paying Rust his pension benefits on a monthly basis going forward pursuant to the Plan documents.

g) Rust be awarded pre-judgment interest;

h) Rust be awarded post-judgment interest;

i) Rust be awarded costs;

j) Rust be awarded attorneys' fees associated with each Count in this lawsuit; and

k) Rust be awarded all such other further and appropriate equitable relief.

Respectfully submitted,

**EDWIN J. RUST**

By: /s/ Jon S. Hubbard
      Of Counsel

Anthony F. Troy
Virginia State Bar No. 05985
Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
*Counsel for Plaintiff Edwin J. Rust*
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
tony.troy@troutmansanders.com
jon.hubbard@troutmansanders.com

1943784v1